IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROBERT LAWRENCE PIPKIN,**

      **Petitioner,**

    **v.**                                    **Civ. No. 20-848 RB/SCY**

**RICK MARTINEZ, Warden, et al.,**

      **Respondents.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This Proposed Findings and Recommended Disposition addresses Petitioner Robert Lawrence Pipkin's habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Doc. 1. The Honorable Robert C. Brack referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 9. After reviewing the briefs, the state court record, and the relevant law, I recommend denying Pipkin's petition on the merits in its entirety.

## BACKGROUND

### 1. Factual Background

On May 7, 2015, Pipkin was charged in New Mexico state court with one count of criminal sexual penetration in the first degree and one count of criminal sexual contact of a minor in the third degree. Doc. 8-1 at 1 (Ex. A). The Court takes the following factual allegations from Pipkin's docketing statement on his direct appeal to the New Mexico Court of Appeals. *Id.* at 56-57 (Ex. N). According to the victim, on March 24, 2015, Pipkin came to the victim's house, ate dinner with the victim and her family (mother, father, and siblings), and was hanging out. After a time, the victim's parents and siblings went to sleep, leaving the victim and Pipkin in the living room to sleep. The victim was on a smaller couch and Pipkin was on a larger couch in

the living room. About thirty minutes after the victim's mother went to bed, Pipkin asked the victim to come over and lie down with him, which she did. The victim was dressed in pants and a shirt and Pipkin was clothed except for his shoes. A short time later, Pipkin started rubbing his hands on the victim's breasts, over her T-shirt. He then unbuttoned her pants and put his hand down her underwear, sliding his hand along the lower part of her vagina and putting his finger inside her. After this, Pipkin told the victim to button her pants and she told him to leave, which he did.

**2. Procedural Background**

Pipkin's case was scheduled to proceed to trial on September 28, 2016, but he was forty minutes late, resulting in the court issuing a bench warrant for failure to appear. Doc. 8-1 at 3 (Ex. B); *see also id.* at 70-71 (Ex. P) (Pipkin's statement of facts on appeal). That same day, his counsel, Arlon Stoker, moved to withdraw as counsel, indicating that the state intended to pursue a felony failure to appear charge and Mr. Stoker would likely be called as a witness in that case. *Id.* at 4 (Ex. C). On October 12, 2016, the state trial court granted Mr. Stoker's motion to withdraw. *Id.* at 5-7 (Exs. D, E). Thereafter, Matthew Cockman with the Law Office of the Public Defender entered his appearance on behalf of Pipkin. *Id.* at 8 (Ex. F).

Pipkin proceed to trial in August 2017, and on August 28 the jury returned a guilty verdict on Count I (criminal sexual penetration of a child under the age of thirteen) and Count II (criminal sexual contact of a child under the age of thirteen). *Id.* at 39-40 (Exs. I, J). On February 21, 2018, the state court entered judgment, sentencing Pipkin to nineteen years' incarceration (including a one year habitual offender enhancement) and an indeterminate period of supervised parole for Count I, and seven years' incarceration (including a one year habitual offender enhancement) and an indeterminate period of supervised parole for Count II. *Id.* at 43-47 (Ex. L).

The sentences imposed run consecutively for a total of 26 years' incarceration, with four years of the sentence suspended. *Id.* at 45 (Ex. L).

Pipkin, proceeding through counsel, appealed on February 22, 2018, *id.* at 48-53 (Ex. M), raising two issues: insufficient evidence and violation of Double Jeopardy rights. *Id.* at 54-61 (Ex. N). The New Mexico Court of Appeals issued a Notice of Proposed Summary Disposition, proposing summary affirmance of Pipkin's conviction. *Id.* at 62-67 (Ex. O). Pipkin filed a memorandum in opposition and moved to amend his docketing statement to add a claim that his charge of felony failure to appear violated his Fifth Amendment due process rights and Sixth Amendment right to counsel. *Id.* at 68-80 (Ex. P). The Court of Appeals denied Pipkin's motion to amend and affirmed his conviction. *Id.* at 81-87 (Ex. Q).

Thereafter, Pipkin, proceeding through counsel, filed a petition for writ of certiorari with the New Mexico Supreme Court, raising two issues: (1) were Pipkin's Equal Protection and Due Process rights violated by the Court of Appeals' denial of his motion to amend docketing statement wherein he raised a Sixth Amendment right to counsel issue; and (2) was Pipkin's Sixth Amendment right to counsel violated. *Id.* at 88-102 (Ex. R). The New Mexico Supreme Court denied the petition for writ of certiorari on March 5, 2019. *Id.* at 103-04 (Ex. S).

On May 18, 2020, Pipkin, now proceeding pro se, filed a petition for writ of habeas corpus with the state district court, raising three grounds and many sub-grounds for relief: (1) violation of the right to the effective assistance of counsel by his counsel's failure to investigate, failure to retain expert witnesses, failure to pursue pretrial motions, failure to effectively impeach prosecution witnesses, and cumulative effect of counsel's errors; (2) prosecutorial misconduct including the prosecutor's knowing use of false testimony, misconduct in closing argument, and cumulative effect of prosecutorial misconduct; and (3) fundamental error. *Id.* at 106-37 (Ex. U).

The Law Office of the Public Defender reviewed Pipkin's habeas petition and determined, pursuant to 5-802(H)(A) NMRA, that it was "not a proceeding that a reasonable person with adequate means would be willing to bring at a person's own expense." *Id.* at 142 (Ex. V). The state district court dismissed the habeas petition on July 8, 2020. *Id.* at 143-44 (Ex. W). Pipkin sought review from the New Mexico Supreme Court, *id.* at 145-63 (Ex. X), which the Supreme Court denied, *id.* at 164 (Ex. Y).

On August 24, 2020, Pipkin filed the present § 2254 habeas petition in federal court. Doc. 1. After conducting initial screening pursuant to Habeas Corpus Rule 4, the Court ordered Respondents to answer the petition. Doc. 4. The State Respondents filed an answer on November 10, 2020. Doc. 8.

## EXHAUSTION

As an initial matter, under 28 U.S.C. § 2254(b), a petition for writ of habeas corpus cannot be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires that a claim be pursued "through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation and quotations omitted). Said another way, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011). The exhaustion requirement is still satisfied even if the highest court exercises discretion not to review the case. *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). Further, "[t]he exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Id.*

"Exhaustion requires that the claim be 'fairly presented' to the state court, which 'means that the petitioner has raised the substance of the federal claim in state court.'" *Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) (quoting *Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009)). In other words, "in order to be fairly presented, the state-court claim must be the 'substantial equivalent' of its federal habeas counterpart." *Id.* at 891 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). "[M]ere similarity of claims is insufficient to exhaust[, a]nd the assertion of a general claim before the state court is insufficient to exhaust a more specific claim asserted for habeas relief." *Id.* "To satisfy exhaustion then, the habeas petition's focus – as well as the alleged errors that it identified – cannot depart significantly from what the petitioner had presented to the state court." *Id.*

Here, the state asserts, and I agree, that Pipkin has properly exhausted all grounds for relief. In ground one, Pipkin raises ineffective assistance of counsel for failing to interview key witnesses, failure to use a negative DNA test at trial, failure to retain an expert, and failure to impeach law enforcement witnesses. Doc. 1 at 5. Pipkin raised these same issues in his state habeas petition, which he pursued up to the state's highest court. *See* Doc. 8-1 at 106-37 (Ex. U), 142 (Ex. V), 143-44 (Ex. W), 145-63 (Ex. X), 164 (Ex. Y). Ground two raises prosecutorial misconduct, including allegations that the prosecutor lied about the plea agreements offered, that the prosecutor used false testimony, and that the prosecutor misstated an alleged confession in closing arguments. Doc. 1 at 7. Again, Pipkin raised these same issues in his state habeas petition, which he pursued up to the state's highest court. *See* Doc. 8-1 at 106-37 (Ex. U), 142 (Ex. V), 143-44 (Ex. W), 145-63 (Ex. X), 164 (Ex. Y). Lastly, in ground three, Pipkin asserts that he was denied a lawyer during a critical proceeding. He explains that he did not exhaust ground three because he "was afraid that if [he] raised an issue against [the] Judge he would rule

against [his] case so [he] saved it for Fed. Courts." Doc. 1 at 9. While Pipkin did not raise this issue in his initial appeal to the New Mexico Court of Appeals on direct appeal, he raised it in his motion to amend docketing statement and in his appeal to the New Mexico Supreme Court. *See* Doc. 8-1 at 68-80 (Ex. P), 81-87 (Ex. Q), 88-102 (Ex. R), 103-04 (Ex. S). I therefore recommend finding that he did properly exhaust ground three.

Because Pipkin has properly exhausted all grounds for relief raised in the present petition, I recommend reviewing each ground for relief on its merits.

## LEGAL STANDARD

Under 28 U.S.C. § 2254, a federal court may only grant a state prisoner's petition for a writ of habeas corpus where the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to Section 2254(d), when the prisoner's claims have been adjudicated on the merits in state court, such a petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Such review must be "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. . . .  [Section] 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations and internal quotation marks omitted). "The petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n unreasonable application is different from an incorrect one."). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98; *see also Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even

where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.") (emphasis in original).

When determining if a state decision was based on an unreasonable determination of facts in light of the evidence presented, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence.").

## ANALYSIS

In his Section 2254 habeas petition, Pipkin raises three grounds for relief: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) denial of a lawyer at a critical proceeding. At the state court level, the New Mexico Supreme Court denied Pipkin's petitions for writ of certiorari on both his direct appeal and collateral attack without offering reasoning. Doc. 8-1 at 103-04, 164 (Exs. S, Y). In such a situation, the United States Supreme Court directs this habeas court to "'look though' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Accordingly, in addressing Pipkin's grounds for relief and reviewing the state court decision, for grounds one and two, I will review the trial court's order dismissing Pipkin's state petition for writ of habeas corpus (Doc. 8-1 at 143-44 (Ex. W)) and for ground three, I will review the New Mexico Court of Appeals' Memorandum Opinion (Doc. 8-1 at 81-97 (Ex. Q)).

While § 2254(d) only applies to claims adjudicated on the merits by the state court,

"[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. Here, there is no indication that the state trial court or the New Mexico Court of Appeals denied Pipkin's direct appeal or collateral attack based on some procedural principle; therefore, I recommend presuming that they denied his appeals on the merits.

### 1.   Ineffective Assistance of Counsel

In his first ground for relief, Pipkin asserts that his counsel provided him ineffective assistance. Doc. 1 at 5. It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686-87. In order to establish an ineffective assistance claim, a movant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88.

Under the first prong, "the performance inquiry must be whether counsel's assistance was reasonable considering all circumstances." *Id.* at 688. However, review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Id.* (citation omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Harrington*, 562 U.S. at 105).

The inquiry does not stop there; rather, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

When an ineffective assistance of counsel claim comes to the Court by way of a § 2254 habeas petition, the petitioner faces an even more difficult burden to show that the state court's decision to deny his ineffective assistance of counsel claim was contrary to or an unreasonable application of clearly established federal law. *See Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 742 (10th Cir. 2016) (holding that a review of ineffective assistance of counsel claims in the context of a § 2254 petition are "doubly deferential in that [the court] take[s] a highly deferential look at counsel's performance [under *Strickland*] through the deferential lens of § 2254(d)"); *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [the court] defer[s] to the state court's determination that counsel's performance was not deficient, and further, defer[s] to the attorney's decision in how best to represent a client." (internal citation omitted)).

Here, Pipkin asserts that his counsel was ineffective in four ways: (1) counsel failed to interview multiple key witnesses; (2) counsel failed to use a negative DNA test at trial; (3) counsel failed to retain an expert witness; and (4) counsel failed to impeach law enforcement witnesses. I recommend denying relief as to each of these claims for the reasons stated below.

   a.   Failure to Interview Key Witnesses

Pipkin alleges that his counsel failed "to interview multiple potential key witnesses that can corroborate defense strategy of lack of intent. Jamie Pipkin and Shelbi Pipkin being said witnesses." Doc. 1 at 5. Pipkin presented this same issue in his state habeas petition. Doc. 8-1 at 122 (Ex. U) ("In the petitioner's case, defense counsel failed to interview multiple potential key witnesses for the defense . . . that can corroborate the defense strategy."). The trial court denied relief on this ground, finding that "Petitioner failed to state his claim with particularity or attach supporting documentation." *Id.* at 143 (Ex. W).

Pipkin presents no arguments to establish that the state court's holding was contrary to or an unreasonable application of clearly established law. To the contrary, the state court's decision follows *Strickland* because Pipkin did not present any information to the state trial court to show that his counsel's performance fell below an objective standard of reasonableness or that, but for the alleged error, there is a reasonable probability that the outcome of his case would have been different. Indeed, as the state court pointed out, Pipkin did not even explain which witnesses his counsel failed to interview. In the present motion, Pipkin for the first time states that his counsel failed to interview Jamie Pipkin and Shelbi Pipkin. But he still fails to provide any further information, such as what he alleges his counsel would have learned had his counsel interviewed those witnesses. As a result, he neither meets his burden to show his counsel's failure to interview those two witnesses fell below the objective standard of reasonableness nor his burden

to demonstrate the outcome of his case would have been different if his counsel had interviewed those witnesses.

    b.  <u>Failure to Use Negative DNA Test</u>

Pipkin alleges that his counsel was ineffective by his "failure to use negative DNA test at trial that was done with prior counsel." Doc. 1 at 5. In his state habeas petition, Pipkin likewise asserted this his counsel was ineffective because he "never used in trial and/or never knew about a negative DNA test done with previous counsel for the defendant." Doc. 8-1 at 122 (Ex. U). The state court again found that Pipkin "failed to state his claim with particularity or attached supporting documentation" and denied his requested relief. *Id.* at 143 (Ex. W).

Pipkin offers no arguments to show that the state court's denial of his claim was contrary to or an unreasonable application of federal law. His assertion also fails to demonstrate that his counsel was ineffective. Under the first *Strickland* prong, Pipkin fails to present any information to show that his trial counsel's performance fell below an objective standard of reasonableness. The state alleged Pipkin digitally penetrated the victim and rubbed her breasts. Although Pipkin summarily asserts that his counsel should have presented evidence of a negative DNA test, Pipkin does not argue that, if he committed the crime of which he is accused, his DNA necessarily would have been present. Although the Court can imagine a scenario in which failing to use a negative DNA test in a sexual assault case is unreasonable, Pipkin presents no arguments that such a scenario existed here and the Court will not fashion Pipkin's "arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Without more development about the significance of the negative DNA test, the Court will not presume it was unreasonable for trial counsel to forego the potentially confusing testimony regarding DNA and focus Pipkin's

defense in other areas.

Pipkin's failure to explain the potential significance of the negative DNA test also constitutes a failure at the second prong of the *Strickland* test. Pipkin presents no argument to show that, had his counsel used the DNA test, there is a reasonable probability the outcome of his case would have been different.

c.  Failure to Retain Expert Witness

Pipkin asserts that his trial counsel was ineffective by his "failure to retain expert witness testimony that could corroborate defense strategy even [though] witness was already paid with previous counsel." Doc. 1 at 5. Pipkin likewise presented this argument in his state habeas petition: "[C]ounsel was negligent in failing to pursue expert witness testimony that could have corroborated a key component to the defense strategy. One that was already paid for by the defendant with previous counsel." Doc. 8-1 at 123 (Ex. U). The state trial court rejected this argument, holding that Pipkin "failed to state with particularity the identity of the expert, what 'key component of the defense strategy' the expert would corroborate." *Id.* at 144 (Ex. W).

Pipkin has failed to meet his burden to show that the state court's holding was contrary to or an unreasonable application of federal law. He failed to present to the state court (or this Court) any information to show how, by not using an expert witness, his counsel's performance fell below an objective standard of reasonableness. Pipkin has also failed to show, to either the state court or this Court, how the outcome of his case would have been different had his counsel called an expert witness.

d.  Failure to Impeach Law Enforcement Witnesses

Lastly, Pipkin asserts that his counsel was ineffective by his "failure to impeach prosecution law enforcement witnesses who made contradictory statements regarding alleged

confession." Doc. 1 at 5. In his state habeas petition, Pipkin similarly asserted that his "trial counsel bypassed numerous opportunities to impeach prosecution witnesses. In particular, two critical key, professional witnesses, both law enforcement officers, when they both made statements contradictory to what was on the original audio recording of petitioner's initial interview with said law enforcement officers. Whether defense attorney knew of or inadvertently didn't play the audio recording at trial to show jury impeachable evidence remains to be seen." Doc. 8-1 at 129 (Ex. U). The trial court rejected this argument, holding that Pipkin's claim was "stated generally" and that he "failed to provide supporting documentation." *Id.* at 144 (Ex. W).

Pipkin's petition to this Court suffers from the same defects: (1) rather than specifically setting forth what line of questions his trial counsel should have pursued on cross-examination, Pipkin stops at the general allegation quoted in the above paragraph; and (2) Pipkin fails to cite evidence in support of his claims. Thus, as with his other claims for ineffective assistance of counsel, Pipkin fails to meet his burden to show that the state court's decision was contrary to or an unreasonable application of clearly established law. Indeed, Pipkin presents no argument now, or in his state habeas petition, to meet either prong of the *Strickland* test. That is, Pipkin fails to present any argument to show that his trial counsel's cross-examination of law enforcement witnesses fell below an objective standard of reasonableness, or that had his counsel cross-examined certain law enforcement witnesses differently there is a reasonable probability the outcome of the case would have been different.

In sum, I recommend finding that, on all his claims for ineffective assistance of counsel, Pipkin has failed to meet his high burden of showing that the New Mexico trial court's denial of his claims was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, I recommend denying his habeas petition as to ground one.

### 2. Prosecutorial Misconduct

"Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Inquiry into fundamental fairness requires examination of the entire proceeding, including the strength of the evidence against the petitioner, both as to the guilt at that stage of the trial and as to moral culpability at the sentencing phase." *Id.* "It is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Instead, "[t]he ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Id.* "Alternatively, if the alleged prosecutorial misconduct denied the petitioner a specific constitutional right (rather than the general due process right to a fair trial), a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair." *Le*, 311 F.3d at 1013 (internal quotation and citation omitted); *see also Donnelly*, 416 U.S. at 643 ("When specific guarantees of the Bill of Rights are involved," such as right to counsel or the privilege against compulsory self-incrimination, "this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them.").

Here, Pipkin raises three claims for prosecutorial misconduct: (1) that the prosecutor lied to the judge about there being only one plea offer; (2) the prosecutor knowingly used false testimony; and (3) the prosecutor deliberately misstated the alleged confession in closing arguments. Doc. 1 at 7. He does not allege any specific constitutional violation, and I read his claims to be asserting that his general due process right to a fair trial was violated. Accordingly,

the question under the clearly established federal law is whether the prosecutor's misconduct rendered the trial fundamentally unfair. This Court's review is thus limited to whether the state court's decision was contrary to or an unreasonable application of federal law. *See Le*, 311 F.3d at 1013 ("In cases where the state court adjudicated a prosecutorial misconduct claim on the merits, we apply [Section 2254's] deferential standard of review.").

Pipkin presented these same claims in his state habeas petition (Doc. 8-1 at 130-34 (Ex. U)) and the state trial court denied relief, holding that Pipkin "failed to provide supporting documentation for this claim." *Id.* at 144 (Ex. W). I recommend finding that Pipkin has failed to meet his burden to show that the state court's decision was contrary to or an unreasonable application of clearly established federal law.

a.  Plea Offers

Pipkin explains that the prosecutor "lied to the judge about there being only one plea. [T]here was a 2nd better offer with previous private attorney that I wanted to take when the state took my private attorney and left me with the public defender." Doc. 1 at 7. At the outset, it is important to focus on exactly what Pipkin is arguing. He is not arguing that, as a result of his second counsel's ineffective assistance, he should receive the benefit of the first plea offer extended to him. Instead, in bringing a due process claim, he is arguing that his *trial* was fundamentally unfair. The plea offer extended to his original counsel, however, played no part in his trial. And Pipkin does not otherwise advance a theory as to how the prosecutor's alleged lie about there being only one plea agreement deprived him of the right to a fair trial. Thus, the lack of information that doomed Pipkin's argument before the state court is again fatal to the same argument he makes in this case. I recommend finding that the state court's decision was not contrary to or an unreasonable application federal law.

b. <u>False Testimony</u>

Pipkin alleges that the prosecutor engaged in misconduct "for knowing use of false testimony." Doc. 1 at 7. He elaborates that "DA questioned law enforcement and their answers were contradicted by audio recording of interview petitioner gave law enforcement, however, public defender didn't even know it existed." *Id.* "A prosecutor who knowingly presents false evidence violates due process, regardless of whether the evidence is relevant to substantive issues or to witness credibility only." *United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). In order to establish such a due process violation, Pipkin must show (1) the "testimony was in fact false, (2) the prosecution knew it to be false, and (3) the testimony was material." *Id.*

Here, it is unclear what alleged false testimony Pipkin is referencing, or even which law enforcement witness he is claiming gave false testimony. Because Pipkin does not specifically identify who made a false statement or exactly what the allegedly false statement was, Pipkin fails to establish any of the three required elements. The state court likewise denied his claim due to his failure to provide supporting documentation (Doc. 8-1 at 144 (Ex. W)) and Pipkin has failed to meet his burden to show that the state court's decision was contrary to or an unreasonable application federal law.

c. <u>Misstatement in Closing Argument</u>

Lastly, Pipkin alleges that the prosecutor engaged in misconduct during closing argument. Doc. 1 at 7. That is, the "DA deliberately misstated [the] alleged confession. DA stated petitioner stated yep, yep and didn't deny allegations. Audio show petitioner stated 'I don't think so' when questioned about [criminal sexual penetration]. However, the DA has refused to give me a copy of audio recording and public defender didn't know it existed." *Id.* In

other words, Pipkin is alleging that when questioned by law enforcement officers about

penetrating the victim, he responded "I don't think so," but in his closing argument, the

prosecutor reported that Pipkin's response was "yep, yep."

The record on this issue is minimal. The Court has no transcript of the state's evidence

regarding Pipkin's alleged confession, no transcript of the prosecutor's closing argument, and no

copy of the audio tape of Pipkin's statement. The basis for Pipkin's knowledge about what is on

the audio tape is also unclear. Pipkin simultaneously argues that his trial attorney didn't know the

tape existed and that the prosecutor refuses to give Pipkin a copy of the audio recording. Thus,

when and how Pipkin might have listened to the audio recording is unclear.

Nonetheless, state court minutes from the trial provide some record of what occurred at

trial. From these minutes, we know that two law enforcement officers testified about Pipkin's

statements. The first, Detective Jon Nyce, testified that he and Detective Tim Nyce met with

Pipkin in the late morning on March 25, 2015 and asked him what happened the night before.

Doc. 8-1 at 15-16 (Ex. G). Detective Jon Nyce testified that Pipkin responded that he touched the

victim on her vagina and breasts and that he admitted he placed his fingers inside her vagina. *Id.*

at 16. The second, Detective Tim Nyce, testified that during a recorded interview with Pipkin,

Pipkin nodded his head in agreement with the statement that he touch the inside of the victim's

vagina. *Id.* at 18. Thus, the state court minutes do not reflect that Pipkin said "Yep, Yep" as part

of his confession. Instead, they reflect that Pipkin nodded yes when asked about whether he

committed the conduct for which he was later convicted. Further, the minutes reflect that the

second witness noted that an audio recording is available. This indicates that, contrary to

Pipkins' assertion, his trial counsel did know about the audio tape. It also indicates that the

prosecution presented evidence of Pipkin's confession through witness testimony rather than

through the audio tape.

This is important because Pipkin does not allege that the state presented false evidence about what was on the tape. In other words, Pipkin does not allege that the prosecutor presented *evidence* that Pipkin said "yep, yep". Instead, Pipkin argues that the prosecutor *argued* that he said "yep, yep." The first problem with Pipkin's allegation is that he provides no transcript or other evidence about what exactly the prosecutor said in closing argument. The second problem is that, even taking Pipkin's characterization of the prosecutor's closing statement as true, argument is not evidence. The trial court specifically instructed the jury not to consider arguments made by the lawyers as evidence in this case. *Id.* at 37 (Ex. H). *See Le*, 311 F.3d at 1013 ("Any cautionary steps—such as instructions to the jury—offered by the court to counteract improper remarks may also be considered."). Jurors are presumed to follow their instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and, assuming they did, the prosecutor's mischaracterization of the tape during closing argument played no part in the final verdict.

Further, other statements that Pipkin does not contest making serve to inculpate him. Specifically, one of the detectives testified at trial that when asked about the allegations against him, rather than denying that he engaged in the sexual acts with which he was charged, Pipkin initially asserted that he thought the victim was someone else, such as his girlfriend. Doc. 8-1 at 16 (Ex. G). And, the investigating officers testified that Pipkin admitted during questioning that he placed his finger inside the victim's vagina. *Id.* at 16, 18 (Ex. G).

Moreover, even setting aside any statements Pipkin allegedly made or did not make, the strength of significant independent evidence weighs against a finding that any alleged comment violated Pipkin's right to due process. *See Le*, 311 F.3d at 1013 ("Inquiry into fundamental

fairness requires examination of the entire proceeding . . . ."). Importantly, the victim testified

that Pipkin rubbed her breasts and inserted his finger into her vagina. Doc. 8-1 at 64 (Ex. O).

This testimony was then corroborated by the sexual assault nurse examiner who testified that she

noticed a notch with a sharp edge in the victim's hymen which could be consistent with an object

going into her vagina. *Id.* at 12 (Ex. G).

      The state court similarly denied Pipkin's claim for prosecutorial misconduct based on

misstatements in closing arguments due to his failure to provide supporting information. Doc. 8-

1 at 144 (Ex. W). Pipkin has not shown that the state court's decision was contrary to or an

unreasonable application of federal law.

### 3.  Denial of A Lawyer During A Critical Proceeding

      Pipkin's third and final ground for relief is that he was denied a lawyer during a critical

proceeding. "The Sixth Amendment guarantees a criminal defendant the right to counsel during

the critical stages of an adversarial proceeding." *United States v. Gordon*, 4 F.3d 1567, 1571

(10th Cir. 1993) (citing *Kirby v. Illinois*, 406 U.S. 682, 690 (1972)); *see also United States v.

Cronic*, 466 U.S. 648, 659 n.25 (1984) ("The Court has uniformly found constitutional error

without any showing of prejudice when counsel was either totally absent, or prevented from

assisting the accused during a critical stage of the proceeding."). "Critical stages are those steps

of a criminal proceeding that hold significant consequences for the accused." *United States v.

Collins*, 430 F.3d 1260, 1264 (10th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 695-96

(2002)). "Critical stages include arraignments, postindictment interrogations, postindictment

lineups, and the entry of a guilty plea." *Missouri v. Frye*, 566 U.S. 134, 140 (2012).

      In the present habeas petition, Pipkin explains that "[a]fter state took my private attorney

from me the [first] hearing held was for withdrawal of private attorney due to conflict of interest,

20

having been named as a witness against me. At that hearing, I had no lawyer. Judge asked the

group of public defendants about it, then named one to represent me. She told the Judge 'I can't!

I don't know anything about his case!' Judge told her 'it doesn't matter, just stand by him.'"

Doc. 1 at 8. To provide context, after Pipkin was forty minutes late for his jury trial scheduled on

September 28, 2016, his counsel, Arlon Stoker, moved to withdraw because the state indicated it

would pursue a felony failure to appear charge and Mr. Stoker would likely be called as a

witness. Doc. 8-1 at 4 (Ex. C). The state trial court held a hearing on the motion to withdraw on

October 12, 2016. *Id.* at 5-6 (Ex. D). During that hearing, the trial court granted Mr. Stoker's

motion to withdraw, then directed a public defender in the courtroom to stand next to Pipkin.[1]

*See id.* at 74 (Ex. P). On October 26, 2016, new counsel from the Law Offices of the Public

Defender entered his appearance in place of Mr. Stoker. *Id.* at 8 (Ex. F).

       Although Pipkin did not originally present this issue on direct appeal, in addressing the

New Mexico Court of Appeal's proposed summary disposition, he moved to amend his docking

statement to add the Sixth Amendment issue. *Id.* at 70 (Ex. P). Among other things, Pipkin

argued in his motion to amend the docketing statement that "[a]s the withdrawal left Mr. Pipkin

without counsel, the trial Court summoned a public defender to stand [in] as counsel for Mr.

Pipkin. That public defender explained that he knew nothing about the case and could not be

---

[1] The parties dispute what happened once the court directed another attorney to stand next to
Pipkin. Pipkin asserts that the new public defender responded "I don't know anything about his
case," but the judge still directed her to stand next to Pipkin. Doc. 1 at 8; Doc. 8-1 at 74 (Ex. P).
The state, in contrast, explains that during the hearing on the motion to withdraw, Ms. Fields, a
public defender, was present in the courtroom and the judge asked if Ms. Fields was representing
Pipkin. Doc. 8 at 15. She responded, "Your honor, I wasn't here for this hearing, but I certainly
can." *Id.* The state explains that its version of events comes from an audio recording of the
hearing, but it did not submit a copy of the recording to the Court. In any event, the Court need
not resolve this dispute because, even assuming Pipkin had no counsel during the motion to
withdraw hearing, that hearing was not a critical proceeding.

effective at that point. Therefore, Mr. Pipkin was deprived of his right to counsel under the Sixth Amendment to the U.S. Constitution." *Id.* at 74 (Ex. P) (internal citation omitted). The New Mexico Court of Appeals denied Pipkin's motion to amend, finding that the new issue raised was not viable. *Id.* at 87 (Ex. Q).

Pipkin fails to offer any argument to show that the New Mexico Court of Appeals' decision was contrary to or an unreasonable application of federal law. Moreover, I conclude that Pipkin's Sixth Amendment right to counsel was not violated because the hearing on the motion to withdraw was not a critical proceeding. While the Supreme Court has not specifically addressed whether a motion to withdraw as counsel is a critical proceeding, the Seventh Circuit, drawing on Supreme Court precedent, found that "a defense counsel's motion to withdraw" does not "qualify as a critical stage of the proceeding for Sixth Amendment purposes, as the proceeding is simply not the sort of trial-like confrontation between the accused and the state that gives an accused a Sixth Amendment right to counsel." *United States v. Franklin*, 547 F.3d 726, 734 (7th Cir. 2008) (citing *United States v. Ash*, 413 U.S. 300, 312 (1973)). Further, Mr. Stoker represented Pipkin during the first part of hearing, and after the court granted his motion to withdraw and Ms. Fields stood next to Pipkin, there is no indication that any criminal proceeding with significant consequences took place. *See* Doc. 8-1 at 6 (Ex. D) (minutes from hearing, indicating the court discussed continuing the trial date after addressing the motion to withdraw). For these reasons, I recommend denying Pipkin's third ground for relief.

**4. Evidentiary Hearing**

A petitioner is "entitled to an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005) (citation and internal quotation

marks omitted). However, factual allegations must be "specific and particularized, not general or conclusory." *Id.* at 858-59. "Moreover, an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Id.* at 859. Here, Pipkin presents no specific and particularized factual allegations that would entitle him to habeas relief. Accordingly, I believe that this matter can be resolved on the record and I recommend finding that Pipkin is not entitled to an evidentiary hearing.

**RECOMMENDATION**

For the above-stated reasons, I recommend denying Pipkin's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (Doc. 1) on the merits as to all grounds for relief and that the petition be dismissed with prejudice.

I further recommend that Pipkin is not entitled to a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (finding that to be entitled to a certificate of appealability, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").

_____
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**